1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| GARRISON S. JOHNSON, | Case No.  1:10-cv-00803-AWI-MJS (PC) |
|---|---|
| Plaintiff, | **ORDER TO DENY PLAINTIFF'S MOTION TO PROCEED IN FORMA PAUPERIS AND MOTION TO APPOINT EXPERT WITNESS (ECF NO. 106);** |
| v. | |
| MATTHEW CATE, et al., | **FINDINGS AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S SUR-REPLY (ECF NO. 99);** |
| Defendants. | |
| | **GRANT IN PART DEFENDANT'S MOTION TO STRIKE (ECF NO. 93);** |
| | **DENY PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S EXPERT WITNESS'S DECLARATION (ECF NO. 85); AND** |
| | **GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 66)** |
| | **FOURTEEN (14) DAY OBJECTION DEADLINE** |

## I.      INTRODUCTION AND PROCEDURAL HISTORY

        Plaintiff is a state prisoner proceeding pro se in this civil rights action brought pursuant to 42 U.S.C. § 1983. The matter proceeds against Defendant Harrington on Plaintiff's Eighth Amendment claim and state law negligence claim. (ECF Nos. 19, 20, and 23.) Specifically, Plaintiff claims that Defendant was deliberately indifferent to a

1  serious risk of harm to Plaintiff from arsenic-contaminated water at Kern Valley State

2  Prison ("KVSP") where Plaintiff was housed. (ECF No. 19.)

3       Defendant filed a motion for summary judgment on September 11, 2014. (ECF

4  No. 66.) Plaintiff filed an opposition, in which he also moves to strike Defendant's expert

5  witness's declaration. (ECF No. 85.) Defendant filed a reply (ECF No. 90), an opposition

6  to Plaintiff's motion to strike (ECF No. 91), and a motion to strike Plaintiff's evidence

7  (ECF No. 93). Plaintiff then filed a sur-reply (titled "Notice of Errata"), which includes a

8  number of attachments intended to authenticate and substantiate claims made in

9  Plaintiff's opposition. (ECF No. 94). Defendant moves to strike the sur-reply as

10  unauthorized. (ECF No. 99.)

11       Previously, Plaintiff filed a motion to stay Defendant's motion for summary

12  judgment on the ground that he intended to obtain a declaration from someone at the

13  Center for Disease Control and Prevention to submit an opinion in support of his

14  opposition to Defendant's motion. (ECF No. 95.) This motion was granted in part on July

15  6, 2015, and Plaintiff was granted thirty days to consult with a proposed expert witness.

16  (ECF No. 105.) Following the conclusion of that 30-day period, Plaintiff filed a motion to

17  proceed in forma pauperis and a motion for appointment of an expert witness. (ECF No.

18  106.)

19       These matters are deemed submitted pursuant to Local Rule 230(*l*).

20  **II.**  **PLAINTIFF'S MOTION TO PROCEED IN FORMA PAUPERIS**

21       Plaintiff has repeatedly sought to proceed in forma pauperis for the purpose of

22  obtaining either the appointment of counsel or the appointment of an expert witness.

23  (See ECF Nos. 33, 43, 56.) Each of these motions was denied because Plaintiff paid

24  the filing fee in full on June 17, 2010. (ECF Nos. 35, 44, 81.) Plaintiff once again moves

25  to proceed in forma pauperis in order to obtain the appointment of an expert witness.

26  (ECF No. 106.)

27       The Court will separate Plaintiff's motion to proceed in forma pauperis from his

28  request for the appointment of an expert witness. His motion to proceed in forma

1  pauperis will be denied because Plaintiff has already paid the filing fee in full.

2        Turning to Plaintiff's request for the appointment of an expert witness, pursuant

3  to Federal Rule of Evidence 702, an expert witness may testify to help the trier of fact

4  determine the evidence or a fact at issue. A court has full discretion to appoint an expert

5  witness either by its own motion or by a party's motion. Fed. R. Evid. 706(a); McKinney

6  v. Anderson, 924 F.2d 1500, 1510-11 (9th Cir. 1991), overruled on other grounds by

7  Helling v. McKinney, 502 U.S. 903 (1991). Appointment of an expert witness may

8  generally be appropriate when "scientific, technical, or other specialized knowledge will

9  assist the trier of fact to understand the evidence or decide a fact in issue." Levi v. Dir.

10  of Corr., 2006 WL 845733, 2006 U.S. Dist. LEXIS 18795, at *2 (E.D. Cal. 2006) (citing

11  Leford v. Sullivan, 105 F.3d 354, 358 (7th Cir. 1997)). Here, it is unclear whether

12  Plaintiff seeks appointment of an expert on his own behalf or appointment of a neutral

13  expert pursuant to Federal Rule of Evidence 706. "Reasonably construed, [Rule 706]

14  does not contemplate the appointment of, and compensation for, an expert to aid one of

15  the parties." Trimble v. City of Phoenix Police Dept., 2006 WL 778697, U.S. Dist. LEXIS

16  13061, at *6 (D. Ariz. 2006) (citation omitted). Accordingly, to the extent Plaintiff seeks

17  appointment of an expert to help him present his case, his request is denied.

18        Plaintiff's request can also be reasonably construed as a request for appointment

19  of a neutral expert witness under Federal Rule of Evidence 706. Where a party has filed

20  a motion for appointment of a neutral expert under Rule 706, the court must provide a

21  reasoned explanation of its ruling on the motion. Gorton v. Todd, 793 F. Supp. 2d. 1171,

22  1178 (E.D. Cal. 2011). Several factors guide the court's decision. First, and most

23  importantly, the court must consider whether the opinion of a neutral expert will promote

24  accurate fact finding. Id. at 1179. The court may also consider the ability of the indigent

25  party to obtain an expert and the significance of the rights at stake in the case. Id. at

26  1182-84. Expert witnesses should not be appointed where they are not necessary or

27  significantly useful for the trier of fact to comprehend a material issue in a case. Id. at

28  1181.

Here, Plaintiff claims that Defendant Harrington was deliberately indifferent to a serious risk of harm to Plaintiff from arsenic-contaminated water at KVSP. In order to prevail on an Eighth Amendment claim based on conditions of confinement, the Court must assess whether Plaintiff was deprived of the "minimal civilized measure of life's necessities." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

"[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). To state a claim, an inmate must allege facts to support that he was incarcerated under conditions posing a substantial risk of harm and that prison officials were "deliberately indifferent" to those risks. Farmer, 511 U.S. at 834; Frost, 152 F.3d at 1128. To adequately allege deliberate indifference, a plaintiff must set forth facts to support that a defendant knew of, but disregarded, an excessive risk to inmate safety. Farmer, 511 U.S. at 837. That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

With respect to the first element of Plaintiff's claim, the Court notes that there is no evidence or medical opinion relating Plaintiff's symptoms to ingestion of arsenic-contaminated water. While Plaintiff attempted to locate an expert witness to correlate the two, he was apparently unsuccessful. (See ECF No. 107 at 3.) Therefore, a medical expert opinion would be necessary to establish that Plaintiff's symptoms are caused by and/or related to the arsenic-contaminated water. As indicated earlier, though, the Court will not appoint an independent expert to assist a party with the presentation of his or her case.

Insofar as Plaintiff seeks the appointment of an expert to opine on the risks associated with the concentration of arsenic found in KVSP's water, this request will also be denied as being, in effect, a guised request for the appointment of an expert to assist Plaintiff with his case. It is true that exposure to toxic substances can support a

claim under section 1983. See Wallis v. Baldwin, 70 F.3d 1074, 1076-77 (9th Cir. 1995) (exposure to asbestos). Here, Plaintiff alleges that the concentration of arsenic in the water at KVSP exceeds the EPA's standard and is, therefore, unsafe. But a violation of a regulatory standard does not presumptively violate the Eighth Amendment, and Plaintiff concedes that he lacks expert opinion that the water at KVSP did present a substantial risk of harm to his health. In this regard, Plaintiff is again attempting to secure the appointment of an expert witness to establish a necessary element of his case. Federal Rule of Evidence 706 does not exist to assist a party.

Perhaps of even greater significance here, in addition to establishing that his medical needs are related to unsafe levels of arsenic, plaintiff must also show that Defendant acted with deliberate indifference in exposing him to that unsafe condition. See Estelle, 429 U.S. at 104. Deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal citation omitted). Because the deliberate indifference analysis is subjective, expert testimony is neither necessary nor significantly useful in determining whether Defendant acted with deliberate indifference. Expert testimony would not be admissible on the question of Defendant's state of mind.

Also factoring into the Court's decision to deny Plaintiff's request is the fact that Plaintiff is not indigent. He has paid the filing fee in full and declared as recently as May 4, 2015, that he "is no longer indigent and can afford someone who have [sic] professional experience, training or knowledge in the area of arsenic or medicine to provide to provide a declaration to defeat Defendant's summary judgment motion …." (Pl.'s Decl. ¶ 5, ECF No. 95 at 3-4.)

Accordingly, Plaintiff's motion to proceed in forma pauperis and motion for appointment of an expert witness will be denied.

## III.   DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S SUR-REPLY

The Court next considers Defendant's motion to strike Plaintiff's "Notice of

1  Errata." Generally, no briefing on a motion is permitted beyond the opposition and reply,

2  absent leave of the Court. Here, the Court did not grant Plaintiff leave to file a sur-reply,

3  and the Court does not desire any further briefing on the motion. While a party should

4  be given leave to file a sur-reply if his opponent presents new evidence in the reply,

5  Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996), no new evidence was presented

6  with Defendant's reply in this case. Instead, Defendant's reply identified deficiencies

7  with Plaintiff's evidence and thereon moved to strike some of Plaintiff's evidence and

8  declaration. Plaintiff's Notice of Errata, which was submitted with his opposition to

9  Defendant's motion to strike, includes new evidence that attempts to correct some of

10  the deficiencies identified by Defendant. Though couched as a "Notice of Errata," there

11  is no doubt that Plaintiff is introducing new arguments and evidence for the Court's

12  consideration. Since a Notice of Errata is intended to correct clerical errors, not

13  evidentiary problems, see Bias v. Moynihan, 508 F.3d 1212, 1223-23 (9th Cir. 2007),

14  the Court construes the Notice of Errata as a sur-reply and will recommend that

15  Defendants' motion to strike be granted and Plaintiff's sur-reply be stricken. It is not

16  considered herein in addressing Defendant's motion for summary judgment.

17  **IV.**   **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

18        **A.**   **Legal Standards**

19        Any party may move for summary judgment, and the Court shall grant summary

20  judgment if the movant shows that there is no genuine dispute as to any material fact

21  and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Wash.

22  Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position,

23  whether it be that a fact is disputed or undisputed, must be supported by (1) citing to

24  particular parts of materials in the record, including but not limited to depositions,

25  documents, declarations, or discovery; or (2) showing that the materials cited do not

26  establish the presence or absence of a genuine dispute or that the opposing party

27  cannot produce admissible evidence to support the fact. Fed R. Civ. P. 56(c)(1). The

28  Court may consider other materials in the record not cited to by the parties, but it is not

1 required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist.,
2 237 F.3d 1026, 1031 (9th Cir. 2001).

3       Plaintiff bears the burden of proof at trial, and to prevail on summary judgment,
4 he must affirmatively demonstrate that no reasonable trier of fact could find other than
5 for him. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).
6 Defendants do not bear the burden of proof at trial and, in moving for summary
7 judgment, they need only prove an absence of evidence to support Plaintiff's case. In re
8 Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010).

9       In judging the evidence at the summary judgment stage, the Court may not make
10 credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984,
11 and it must draw all inferences in the light most favorable to the nonmoving party and
12 determine whether a genuine issue of material fact precludes entry of judgment, Comite
13 de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th
14 Cir. 2011).

15       **B.      Undisputed Facts[1]**

16       This action proceeds against Defendant Harrington on Plaintiff's Eighth
17 Amendment claim that he was forced to drink arsenic-contaminated drinking water
18 during his incarceration at KVSP.

19       Plaintiff is a state prisoner who was incarcerated at KVSP from February 2009
20 through October 2012. Pl.'s Decl. ¶ 3; Pl.' Dep. at 2, 11:2-4, 13:25, 14:1-6.

21       Defendant Harrington served as the Warden of KVSP from 2008 through 2010.
22 Harrington Decl. ¶ 1.

23       **a.      Scientific Overview of Arsenic**

24       Arsenic is the twentieth most abundant element on Earth and is present in almost

25

26 [1] Although Plaintiff objects to numerous facts in Defendant's statement of undisputed facts, he generally
fails to cite to admissible evidence in the record in doing so. See Fed. R. Civ. P. 56(c). Accordingly, the
27 Court concludes that improperly disputed facts are, in fact, undisputed. Farrakhan v. Gregoire, 590 F.3d
989, 1002 (9th Cir. 2010) (quoting Beard v. Banks, 548 U.S. 521, 527 (2006)) (finding that a party
28 opposing summary judgment who "fail[s] [to] specifically challenge the facts identified in the [moving
party's] statement of undisputed facts ... is deemed to have admitted the validity of [those] facts ....").

1  all drinking water. Geller Decl. ¶ 8. Long-term consumption of very large amounts of

2  arsenic in drinking water can cause disease, including skin lesions, cancers of the skin,

3  bladder and lung, cardiovascular and cerebrovascular diseases and diabetes mellitus.

4  Geller Decl. ¶ 8. These diseases, though, generally require exposure periods of 20

5  years or more, and exposure to drinking water arsenic concentrations of more than 200

6  parts per billion ("ppb"). Geller Decl. ¶ 8. It has not been scientifically established to be

7  toxic in amounts below 50 ppb, as shown by the absence of apparent adverse effects in

8  the many millions of Americans living for decades with this standard. Geller Decl. ¶ 20.

9  **b.  Federal Standard for Arsenic in Drinking Water**

10  Prior to 2001, the Federal Environmental Protection Agency's ("EPA") standard

11  for arsenic concentration was 50 ppb. Wise Decl. ¶ 4. At the time, KVSP's drinking

12  water complied with this standard. Wise Del. ¶ 5.

13  In January 2001, the EPA adopted a new standard of 10 ppb, and water systems

14  were to comply with the new standard by January 2006. Wise Decl. ¶ 4. The state of

15  California adopted the 10 ppb standard in November 2008. Wise Decl. ¶ 4.

16  Between 2009 and 2013, the water at KVSP complied with the old maximum

17  contaminant level. Wise Decl. ¶ 5.

18  **c.  Regular Testing of Water and Notices to Inmate at KVSP**

19  Since it opened as a prison facility in 2005, KVSP regularly tested the drinking

20  water produced by its two wells. Wise Decl. ¶ 5. During the time that Plaintiff was

21  housed at KVSP, arsenic levels ranged between 13 and 26 ppb. Wise Decl. ¶¶ 5, 8-9.

22  KVSP provided quarterly notices to KVSP inmates reporting the level of arsenic

23  detected in the drinking water. Wise Decl. ¶ 10, Ex B. These notices were being

24  distributed prior to Defendant's arrival at KVSP and were standard notices developed by

25  the Chief Medical Officer and prior wardens at KVSP. Harrington Decl. ¶ 7; Wise Del. ¶

26  10. Pl.'s Dep. at 13:6-9.

27  From March 2007 through the present, Dr. S. Lopez served as the Chief Medical

28  Executive ("CME") at KVSP. Lopez Decl. ¶ 1. As the CME, Dr. Lopez monitored the

different medical conditions diagnosed in the prison population, including those caused by environmental factors. Lopez Decl. ¶ 8.

When KVSP began posting notices to inmates regarding the levels of detectable arsenic in the water, Dr. Lopez contacted the California Poison Control System, Fresno/Madera, to inquire as to the possible health concerns raised by the arsenic levels. Lopez Decl. ¶ 9. Dr. R. Geller, M.P.H., responded to Dr. Lopez's inquiry and provided a report in which he stated that the expected health problems, acute or chronic, caused at KVSP by arsenic  concentrations of 22 ppb would be zero.[2] Lopez Decl. ¶ 10. Per Dr. Lopez, Dr. Geller also stated that there was no need for other public-health actions other than the need to get the levels in compliance with federal standards. Lopez Decl. ¶ 10. Dr. Lopez agreed with Dr. Geller's opinion. Lopez Decl. ¶ 11.

After consulting with the CME, Defendant was informed that the levels of arsenic in the drinking water before the plant was installed did not represent a health concern. Harrington Decl. ¶ 8.

While employed at KVSP, Defendant consumed the water from the wells.[3] Harrington Decl. ¶ 2. As for prison staff members, they were not provided with bottled water. Harrington Decl. ¶ 9. Some did drink bottled water, but it was purchased at their own expense, and funding of bottled water for staff was never authorized. Harrington Decl. ¶ 9.

---

[2] In his declaration, Dr. Lopez refers to Exhibit I, which purports to be Dr. Geller's report in response to Dr. Lopez's inquiry. See ECF No. 74. The Court has reviewed Exhibit I and can find no reference to Dr. R. Geller or the California Poison Control System, Fresno/Madera. Instead, the exhibit is a November 2, 2009 letter from an unidentified individual at the California Department of Public Health addressed to someone at KVSP whose name has been redacted, and the signature line does not include a name, only an illegible signature from a "Visalia District Engineer, Southern California Field Operations Branch." Moreover, this letter does not state that the chance of health problems is zero; instead, it states that "if a person drinks 2 liters of water a day for 70 years, the increased cancer risk is 1 in 10,000 – 1,000,000." Exhibit I also includes an undated letter from an EPA toxicologist, Dr. Bruce A. Mader, to someone at KVSP whose name has also been redacted. In this letter, Dr. Mader states that "medical studies don't show much if any disease" at the arsenic levels in KVSP's water, but then goes on to say that "the research suggests that arsenic is causing something to happen biochemically even at very low levels."

[3] Plaintiff objects to this fact, but has provided no basis for his objection. See Fed. R. Evid. 602.

### d.    The Arsenic-Removal Plant's Design and Construction

Generally, the installation of an arsenic-removal plant at a prison facility is a long and involved process. Lewis Decl. ¶ 3. It requires capital outlay budget change proposals to fund the preliminary plans, working drawings, and construction of the facility. Id. It also requires input from consultants, engineers, California Department of Corrections and Rehabilitation ("CDCR") officials, and officials at the facility, in order to create a facility that meets the short and long term water, personnel, population, and budgetary needs for the entire prison facility. Id. The design also receives input and approval from the California Department of Health Services, Fire Marshal, and other state agencies. Id. After the design is completed and approved, the project is opened for bids, and the lowest responsive construction contractor is chosen to build the facility. Id. The plant is then constructed. Id.

A number of different methods for dealing with the arsenic levels were considered for KVSP, including drilling wells to find a different source of drinking water, but it was determined that the likelihood of finding a compliant source of water was minimal. Wise Decl. ¶ 17. CDCR also considered installing point-of-use filters in the prison, but that was not a viable option for a number of reasons, including feasibility, cost, and the lack of a risk to health. Wise Decl. ¶ 17. In addition, CDCR considered the possibility of connecting to the City of Delano's water system, but the cost-benefit analysis resulted in the conclusion that a stand-alone plant at KVSP was the best option. Lewis Decl. ¶12.

By the time Defendant was appointed Warden of KVSP in 2008, the arsenic-removal plant was already in the design and planning stage; Harrington had no direct involvement in the development of the plan to address the arsenic levels in KVSP's drinking water. Harrington Decl. ¶ 3. Defendant did not have authority to authorize a project the size of the arsenic-removal plant. Harrington Decl. ¶ 4. He only had the

power to authorize expenditures of up to $5,000.[4] Id.

In February 2009, the Facility Planning, Construction and Management division of CDCR submitted a proposal to the California Department of Public Health to bring KVSP water's arsenic levels into compliance with the new federal standard. Wise Decl. ¶ 13, Ex. D. The California Department of Public Health approved the plans on February 7, 2011. Wise Decl. ¶ 14, Ex. E. Construction on the KVSP plant began in October 2011 and was completed in December 2012. Koelzer Decl. ¶¶ 8-9. The project was fully completed in January 2013. Koelzer Decl. ¶ 9.

### e.   Plaintiff's Symptoms

Plaintiff claims that he suffers from high levels of enzymes in his liver, rashes, shortness of breath, stomach pains, and back nerve pain as a result of the arsenic exposure. First Am. Compl. ¶ 8; Pl.'s Dep. at 21:6-25. No medical professional has ever opined on the cause of Plaintiff's symptoms. See Pl.'s Dep. at 26:15—27:7. Plaintiff never communicated with Defendant Harrington about the arsenic levels in the water or its effect on Plaintiff's health.[5] Pl.'s Dep. at 18:11—19:3.

Defendant's medical expert, Dr. Geller, reviewed Plaintiff's medical records and concludes that none of Plaintiff's complaints are typical or consistent with arsenic poisoning. Geller Decl. ¶ 23. Regarding Plaintiff's skin condition, Dr. Geller states that it does not fit the known epidemiology of someone suffering from arsenic poisoning. Geller Decl. ¶ 13. Arsenic causes very specific skin rashes that occur in a temporal progression after a long latency period of drinking high levels of arsenic in water. First, hyperpigmented lesions that are clustered on the trunk and extremities in a tear-drop shaped pattern occur. Then, hyperkeratotic lesions occur on the palms and soles of the

---

[4] Plaintiff disputes this fact, but does not provide the basis for his objection.

[5] Plaintiff objects to this fact and asserts that he communicated with Defendant through the Inmate Appeal process. His deposition testimony, however, provides that he did not communicate directly with Defendant, and his inmate grievance did not have any notation that Defendant reviewed it. See Van Asdale v. International Game Technology, 577 F.3d 989, 998 (9th Cir. 2009) (citing Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991)) ("a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.").

feet. Hypopigmented lesions can also occur. Geller Decl. ¶ 11. Dr. Geller opines that "the symptoms complained of by Mr. Johnson in his complaint, medical records and deposition do not fit the description of a skin condition caused by arsenic, and instead point to common conditions such as eczema or a fungal infection, which are not caused by arsenic poisoning." Geller Decl. ¶ 12.

Regarding Plaintiff's complaints of pain radiating from his back, classic neuropathy of arsenic poisoning involves sensation to the hands and feet, a so-called "stocking and glove neuropathy." Geller Decl. ¶ 14. Dr. Geller opines that Plaintiff's "pain is far more likely a consequence of back problems he has continuously complained of from a gunshot wound with retained bullet fragments he suffered in either 1981, 1982 or 1991 (record is conflicting). In medical records dated January 20, 2010, April 27, 2010, and August 27, 2010, Mr. Johnson's medical record attributes his back and leg pain to the gunshot and its sequellae. ..." Geller Decl. ¶ 14.

## C.   Analysis: Eighth Amendment Conditions of Confinement

### 1.   Legal Standard

The Eighth Amendment protects prisoners from inhumane methods of punishment and confinement. Farmer v. Brennan, 511 U.S. 825 (1994); Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Thus, no matter where they are housed, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted). To establish a violation of the Eighth Amendment, the prisoner must "show that the officials acted with deliberate indifference...." Labatad v. Corrections Corp. of America, 714 F.3d 1155, 1160 (9th Cir. May 1, 2013) (citing Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002).

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer, 511 U.S. at 834. Second, subjectively, the prison official must "know of and

disregard an excessive risk to inmate health or safety." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995).

Objectively, extreme deprivations are required to make out a conditions of confinement claim and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citations and quotations omitted). Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets. Wilson v. Seiter, 501 U.S. 294, 304-05 (1991) (comparing Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979) (outdoor exercise required when prisoners otherwise confined in small cells almost 24 hours per day), with Clay v. Miller, 626 F.2d 345, 347 (4th Cir. 1980) (outdoor exercise not required when prisoners otherwise had access to dayroom 18 hours per day)). Further, temporarily unconstitutional conditions of confinement do not necessarily rise to the level of constitutional violations. See Anderson, 45 F.3d 1310, ref. Hoptowit v. Ray, 682 F.2d 1237, 1258 (9th Cir. 1982) (abrogated on other grounds by Sandin v. Conner, 515 U.S. 472 (1995) (in evaluating challenges to conditions of confinement, length of time the prisoner must go without basic human needs may be considered)).

If an objective deprivation is shown, a plaintiff must show that prison officials subjectively acted with a sufficiently culpable state of mind-that of "deliberate indifference." Wilson, 501 U .S. at 303; Johnson, 217 F.3d at 733. In other words, a prison official is liable for inhumane conditions of confinement only if "the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Further, the plaintiff must show that the defendant officials had actual knowledge of the

1    peril to a plaintiff's basic human needs and deliberately refused to meet those needs.

2    Johnson, 217 F.3d at 734.

3               **2.**     **Parties' Arguments**

4         Defendant Harrington moves for summary judgment on Plaintiff's Eighth

5    Amendment claim on the ground that he was not deliberately indifferent to Plaintiff's

6    health or safety and the arsenic levels in KVSP's drinking water was not poisonous at

7    the doses present. Alternatively, Defendant asserts that he is entitled to qualified

8    immunity.

9         Plaintiff counters that Defendant was deliberately indifferent. He argues that the

10    water at KVSP contained a dangerous form of arsenic – inorganic arsenic – and that

11    Plaintiff's exposure to this arsenic resulted in a variety of ailments.

12               **3.**     **Discussion**

13                 **a.**     **Defendant's Motion to Strike Plaintiff's Evidence**

14         Defendant moves to strike some of Plaintiff's evidence on multiple grounds,

15    including inadmissible hearsay, lack of foundation, lack of personal knowledge, and

16    improper authentication. Plaintiff counters that many of his exhibits are self-

17    authenticating. At issue are the following, which Plaintiff submits in support of his

18    argument that the levels of inorganic arsenic found in KVSP's drinking water during his

19    incarceration were dangerously high:

20         (1) two articles from the Los Angeles Times reporting that the arsenic levels in

21    KVSP's drinking water range between 15 ppb and 23 ppb, that staff members take their

22    own water to work, that inmates' requests for alternative water are routinely denied, and

23    that long-term exposure to arsenic is linked to cancer, Pl.'s Decl., Ex. B, ECF No. 85 at

24    83;

25         (2) a letter from the United States Department of Health and Human Services

26    addressed to Plaintiff in response to his request for information; this letter discusses the

27    health effects of organic and inorganic arsenic and the tests available to measure

28    arsenic, Pl.'s Decl., Ex. A;

(3) a 2009 Consumer Confidence Report that sets forth the amount of various types of contaminants in KVSP's water, Pl.'s Decl., Ex I, ECF No. 85 at 75;

(4) a computer printout from the Centers for Disease Control and Prevention ("CDC") on inorganic arsenic, which provides that "[a]cute ingestion of toxic amounts of inorganic arsenic typically causes severe gastrointestinal signs and symptoms (e.g., vomiting, abdominal pain, and diarrhea)," Pl.'s Decl., Ex. M, ECF No. 85 at 46;

(5) an August 2007 Public Health Statement from the U.S. Department of Health and Human Services' Agency for Toxic Substances and Disease Registry ("ATSDR") noting that oral exposure to low levels of inorganic arsenic may cause dermal effects and peripheral neuropathy, and may result in increased risk of skin, bladder, and lung cancer, Pl.'s Decl., Ex. O, ECF No. 85 at 127; and

(6) a ToxGuide for Arsenic from ATSDR discussing the prevalence and effects of arsenic, Pl.'s Decl., Ex. E, ECF No. 85 at 110.

The Court agrees that there are problems with some of Plaintiff's proffered evidence. "It is axiomatic to state that newspaper articles are by their very nature hearsay evidence and are thus inadmissible if offered to prove the truth of the matter asserted[.]" In re Dual–Deck Video Cassette Recorder Antitrust Litig., 1990 WL 126500, at *3 (D. Ariz. July 25, 1990); see also Larez v. City of Los Angeles, 946 F.2d 630, 642 (9th Cir. 1991); Sacramento Cnty. Retired Employees Ass'n v. Cnty. of Sacramento, 975 F. Supp. 2d 1150, 1154 (E.D. Cal. 2013). Here, Plaintiff offers these articles to prove the content contained therein, including the effects of long-term arsenic exposure. Accordingly, the exhibits constitute hearsay, and the Court will recommend that Defendant's motion to strike these articles be granted. See Vannatta v. Keisling, 899 F. Supp. 488, 491 (D. Or. 1995) aff'd, 151 F.3d 1215 (9th Cir. 1998) (striking newspaper articles as inadmissible hearsay and refusing to consider them on a motion for summary judgment where "[t]he articles discuss the amounts and effects of special interest contributions, and were offered by Defendants to show that out-of-district donors in fact pose a real threat to the campaign system."). The Court also agrees with Defendant that

the letter from the United States Department of Health and Human Services and the 2009 Consumer Confidence Report are inadmissible hearsay and will therefore be excluded from consideration. Fed. R. Evid. 801.

However, the Court will recommend that Defendant's motion to strike be denied as to the printout from the CDC, the August 2007 Public Health Statement from ATSDR, and the ToxGuide for Arsenic from ATSDR.

Under Federal Rule of Evidence 901, evidence that a public record or report is from the public office where items of that nature are kept satisfies the requirement that admitted evidence be authenticated. Premier Nutrition, Inc. v. Organic Food Bar, Inc., 2008 WL 1913163, at *5 (C.D. Cal. Mar. 27, 2008) aff'd, 327 Fed. Appx. 723 (9th Cir. 2009). Here, Plaintiff declares, under penalty of perjury, that he attached "true and correct cop[ies]" of these documents, which were obtained from the agencies' respective website. See Pl.'s Decl. ¶¶ 18, 30. The printouts also bear "distinctive characteristics" of the agencies' websites. Haines v. Home Depot U.S.A., Inc., 2012 WL 1143648, at *7 (E.D. Cal. Apr. 4, 2012) ("courts have considered the 'distinctive characteristics' of the website in determining whether a document is sufficiently authenticated." (citations omitted)). These documents, therefore, are properly authenticated under Rule 901.

Moreover, Rule 902 allows for the self-authentication of certain documents, including official publications: "Books, pamphlets, or other publications purporting to be issued by public authority." Fed. R. Evid. 902(5); Paralyzed Veterans of Am. v. McPherson, 2008 WL 4183981, at *7 (N.D. Cal. Sept. 9, 2008). Federal courts routinely consider records from government websites to be self-authenticating. See, e.g., Estate of Gonzales v. Hickman, 2007 WL 3237727, at *2 (C.D. Cal. May 30, 2007); Lorraine v. Markel Am. Ins. Co., 241 F.R.D. 534, 551 (D. Md. 2007) ("Given the frequency with which official publications from government agencies are relevant to litigation and the increasing tendency for such agencies to have their own websites, Rule 902(5) provides a very useful method of authenticating these publications. When combined with the

16

public records exception to the hearsay rule, Rule 803(8), these official publications posted on government agency websites should be admitted into evidence easily."); U.S. ex rel. Parikh v. Premera Blue Cross, 2006 WL 2841998, at *4 (W.D. Wash. Sept. 29, 2006) (considering documents that can be found on Government websites, such as GAO Reports and Health and Human Services' Reports self-authenticating).

Here, the printout from the CDC, the August 2007 Public Health Statement from ATSDR, and the ToxGuide for Arsenic from ATSDR are available to the public at government-based websites and they bear official insignia. Thus, these documents are an "Official Publication" under Rule 902(5) and are properly authenticated.

Accordingly, the Court will recommend that Defendant's motion to strike be granted in part.

### b.    Discussion

Defendant has presented expert testimony that the levels of arsenic present in KVSP's drinking water during Plaintiff's incarceration were too low to cause any health problems and, furthermore, that Plaintiff's symptoms cannot be attributed to arsenic poisoning. To resist summary judgment, Plaintiff must point to evidence establishing a genuine issue of fact for trial. Celotex, 477 U.S. at 323-24. His evidence must be admissible. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).

Initially, Plaintiff has challenged Dr. Geller's qualifications as an expert, the admissibility of his testimony under Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993), and the helpfulness of his testimony to the Court.[6] Dr. Geller is a licensed physician and board certified in Internal Medicine and Medical Toxicology. He has more than 30 years of experience in the fields of Internal Medicine, Medical Toxicology, and Emergency Medicine, and he is employed by the California Poison Control System, Fresno/Madera Division, at Children's Hospital Central California   as the Medical

---

[6] Plaintiff also challenges Dr. Geller's opinions as incomplete since there is no indication that Dr. Geller considered the alleged fact that KVSP was built atop a former waste site or that he considered the commercial use of lands surrounding KVSP. See Pl.'s Opp'n at 10. It is unclear to the Court, though, how these matters would affect Dr. Geller's expert testimony concerning the nature and effects of arsenic and his opinion on the causes of Plaintiff's symptoms.

Director and Managing Director. Geller Decl. ¶¶ 1-2. His education, experience, and other credentials are extensive and the Court finds him qualified to give expert testimony on the subject of arsenic and its effect on mental and physical health. As an expert witness, Dr. Geller may properly consider Plaintiff's medical records in forming and expressing his opinions. The Court finds Dr. Geller's testimony as set forth in his declaration both relevant and admissible. Therefore, the Court will recommend that Plaintiff's motion to strike Dr. Geller's testimony be denied. Even if Dr. Geller's testimony was not admissible, however, Plaintiff would be in no better position.  In citing Dr. Geller's declaration, Defendant is not only presenting his own evidence, but also pointing out that Plaintiff lacks evidence. Because he bears the burden of proof, Plaintiff was required to come forward with evidence.

Turning to Plaintiff's evidence, the Court finds that Plaintiff has failed to establish the existence of a genuine issue of material fact for trial. As to those documents intended to show that KVSP was built on a former waste site or that the lands adjacent to KVSP are used for farming, agriculture and manufacturing, even if this evidence was admissible, it does not establish what Plaintiff suggests – namely, that KVSP's proximity to these lands resulted in the contamination of KVSP's water with inorganic arsenic. While Plaintiff is attempting to distinguish between organic and inorganic arsenic, and is arguing that he was exposed to the latter (and, presumably, more dangerous) form of arsenic, the record is devoid of any actual testing of the type of arsenic detected in KVSP's water supply.  Plaintiff's assumption that the water contained inorganic arsenic is based entirely on Plaintiff's own speculation, which is, of course, inadmissible. What Plaintiff's evidence does establish is that arsenic, when consumed in large quantities and over an extended period of time, is dangerous. But that fact is undisputed.

The real issues in dispute here are whether the levels of arsenic (whether organic, inorganic, or a combination of the two) actually found in KVSP's drinking water and consumed by Plaintiff were dangerous and whether Plaintiff's health problems can be attributed to the arsenic. Rather than submit admissible evidence on either of these

18

issues, Plaintiff makes conclusory statements that are not based on personal experience or professional expertise. Moreover, Plaintiff's lay opinion as to the cause of his symptoms is speculative and inconsistent with the qualified opinions from Dr. Geller. And, finally, Plaintiff's emotional distress related to a fear of future harm cannot serve as the basis of an Eighth Amendment claim absent a showing of physical injury.[7] Plaintiff has simply failed to submit any competent evidence that his symptoms are related to arsenic consumption.

Even assuming, *arguendo,* that Plaintiff had established that the levels of arsenic detected in KVSP's water were sufficienlty serious to satisfy the Eighth Amendment's first prong and that he was harmed by it,  there is no showing of deliberate indifference. Although Defendant was aware that the level of arsenic in prison water exceeded federal standards, the evidence does not suggests he knew of, and disregarded, a risk that consumption of that water posed a serious threat to inmate health. Rather, the undisputed facts establish that Defendant reasonably inquired of and relied upon on the medical expertise of KVSP's CME, Dr. Lopez, who in turn relied on the expert opinion of Dr. Geller, that the water was safe to drink. Indeed, Defendant himself drank the water. There is no deliberate indifference on these facts.

Having thus examined the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff's entire case rests upon his speculation about the type of arsenic found in KVSP's drinking wells, the dangers of the arsenic-contaminated water at the levels found at KVSP, and the cause of his symptoms. This speculation does not suffice to refute competent scientific evidence and withstand summary judgment. Soremekun, 509 F.3d at 984. Accordingly, Defendant's motion for summary judgment

---

[7] The Prison Litigation Reform Act provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental and emotional injury suffered while in custody without a prior showing of physical injury ." 42 U.S.C. § 1997e(e). The physical injury "need not be significant but must be more than de minimis." Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002)) (back and leg pain and canker sore de minimis); see also Pierce v. County of Orange, 526 F.3d 1190, 1211-13 (9th Cir. 2008) (bladder infections and bed sores, which pose significant pain and health risks to paraplegics such as the plaintiff, were not de minimis ). Plaintiff has not described any physical injury or alleged a diagnosis by a medical professional of physical harm from drinking contaminated water.

should be granted as to Plaintiff's Eighth Amendment claim.

### c.   Qualified Immunity

Defendant contends that, assuming arguendo Plaintiff could demonstrate a question of fact as to deliberate indifference, Defendant is entitled to qualified immunity.

The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). The defendant bears the burden of establishing qualified immunity. Crawford–El v. Britton, 523 U.S. 574, 586-87 (1998). The Supreme Court, in Saucier v. Katz, 533 U.S. 194 (2001), outlined a two-step approach to qualified immunity. The first step requires the court to ask whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier, 533 U.S. at 201. The second inquiry is whether the right was clearly established; in other words, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. In Pearson, the Supreme Court gave district courts discretion to grant qualified immunity on the basis of the "clearly established" prong alone, without deciding in the first instance whether any right had been violated. Id. at 236; accord Ashcroft v. al-Kidd, ⸺ U.S. ⸺, ⸺, 131 S. Ct. 2074, 2080 (2011).

In light of the finding in favor of Defendant on the merits of Plaintiff's Eighth Amendment claim, the Court need not and will not address Defendant's qualified immunity argument.

### D.   Analysis: Negligence

#### 1.   Legal Standard

A public employee is liable for injury to a prisoner "proximately caused by his negligent or wrongful act or omission." Cal. Gov't Code § 844.6(d) (West 2012). "In order to establish negligence under California law, a plaintiff must establish four

1  required elements: (1) duty; (2) breach; (3) causation; and (4) damages." <u>Ileto v. Glock</u>
2  <u>Inc.</u>, 349 F.3d 1191, 1203 (9th Cir. 2003).

3  **2.  Parties' Arguments**

4  Defendant moves for summary judgment on Plaintiff's negligence claim on the
5  ground that Defendant did not owe a duty of care to Plaintiff, he did not breach a
6  general duty of care by not giving Plaintiff bottled water, and Plaintiff has not established
7  causation.

8  In his opposition, Plaintiff argues that Defendant Harrington was negligent
9  because he failed to provide bottled water for drinking despite knowing that the levels of
10  inorganic arsenic in KVSP's drinking water were too dangerous for consumption.

11  **3.  Discussion**

12  Generally, a jailer has a special relationship with a prisoner that creates a duty of
13  care. <u>Lawson v. Superior Court</u>, 180 Cal. App. 4th 1372, 1389 (2010). Whether this duty
14  required that Defendant provide Plaintiff with bottled water is a question that the Court
15  need not answer because Plaintiff has not met his burden to establish that Defendant's
16  conduct was a cause in fact of Plaintiff's injury. <u>PPG Industries, Inc. v. Transamerica</u>
17  <u>Ins. Co.</u>, 20 Cal.4th 310, 315 (1999). As discussed <u>supra</u>, there is simply no evidence
18  before the Court that Plaintiff was harmed by drinking the water at KVSP. Insofar as
19  Plaintiff is alleging injury based on a future illness, there is also no evidence that takes
20  any potential future harm in this case from a mere possibility to a medical probability.
21  <u>See</u> <u>Jones v. Ortho Pharmaceutical Corp.</u>, 163 Cal. App. 3d 396, 402-03 (1985). Absent
22  a showing of injury, Plaintiff's claim necessarily fails. Therefore, the Court will
23  recommend that Defendant's motion for summary judgment on Plaintiff's negligence
24  claim be granted.[8]

25
26
27

---

28  [8] In light of this recommendation, the Court declines to consider Defendant's alternative argument that he is immune pursuant to California Government Code § 820.2.

## V.   CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, the Court HEREBY ORDERS that Plaintiff's motion to proceed in forma pauperis and motion for appointment of expert witness (ECF No. 106) is DENIED; and

The Court HEREBY RECOMMENDS that:

1. Defendant's motion to strike sur-reply (ECF No. 99) be GRANTED;

2. Defendant's motion to strike evidence (ECF No. 93) be GRANTED IN PART;

3. Plaintiff's motion to strike (ECF No. 85) be DENIED;

4. Defendant's motion for summary judgment (ECF No. 66) be GRANTED; and

5. This action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with the findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   September 10, 2015          /s/ *Michael J. Seng*
UNITED STATES MAGISTRATE JUDGE